UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES R. YOUNG and
REBECCA L. YOUNG,

    Plaintiffs,

v.

OAKLAND COUNTY, a municipal
corporation, and MICHAEL J.
BOUCHARD, individually and in
his official capacity as "Sheriff"
and "Co-Employer" with Defendant
County, jointly and severally,

    Defendants.
                                    /

Case No. 05-72575

Honorable Nancy G. Edmunds

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [16]**

Plaintiffs Charles and Rebecca Young have brought this lawsuit against Oakland County and its Sheriff, Michael Bouchard, for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Charles Young alleges that Defendants discriminated against him on the basis of a protected disability by refusing to accommodate him, and his wife Rebecca Young alleges that she has suffered a loss of consortium on the basis of Defendants' alleged discrimination against her husband.

Defendants now move for Summary Judgment, arguing that the ADA claim is time-barred, and in any event, Charles Young did not have a disability protected under the ADA. Defendants further note that Rebecca Young's claim is entirely derivative. Because Defendants are correct as to the first of these arguments, the Court need not reach the

merits of the ADA claim.  For the reasons discussed below, the Court  GRANTS Defendants' Motion for Summary Judgment.

**I.     Background**

While the factual background to this case is complex, only a few uncontested facts must be discussed here.  On October 1, 2001, Oakland County Sheriff Deputy Charles Young ("Plaintiff") was placed on administrative leave.

On December 11, 2001, while still on leave, Plaintiff filed a "Report of Injury On the Job," complaining of Post-Traumatic Stress Disorder.  (Def. Ex. 21 at 36-37; Ex. 4.)  In this Report, Plaintiff reflected one of the unfortunate sides of his School Liaison Officer and Youth Detective position: the investigations of "numerous traumatic deaths of children," including the autopsy of a five-year-old boy and even an accident involving his own nephew.  (Def. Ex. 4.)  Due to his understandable difficulty dealing with these incidents, Plaintiff went on disability leave, receiving workers' compensation benefits and money from his accumulated leave time.

In 2002, Plaintiff met with Oakland County Sheriff Michael Bouchard and Captain Michael McCabe to explain his desire to go back to work.  (Def. Ex. 21 at 56.)  According to Plaintiff, McCabe "kept saying, 'Just get well and we will bring you back.  Just get well and we will bring you back.'"  (Def. Ex. 21 at 56.)  Three fitness examinations, however, revealed serious concerns about Plaintiff's ability to handle stressful situations, and thus to work as a Deputy Sheriff.  (Def. Ex. 11; Ex. 12; Ex. 13.)

On February 10, 2003, Plaintiff initiated an email exchange with McCabe regarding his ability to return to work.  McCabe responded by asking whether any particular

modifications or alternate positions would be suitable.  Plaintiff asked to return to his previous job.  Then, on February 27, McCabe responded,

> Based on what you have told me in this email and what you[r] doctor has sent us in writing there doesn't appear to be any job at the Sheriff's Department that would accommodate you.  It is very clear per your doctor that you cannot be exposed to trauma without the likelihood that your PTSD would return.

(Def. Ex. 10 at 25-26.)

Plaintiff sent an email arguing that "there is no reason" he could not return to his duties.  He called the Department's position "the [b]iggest crock that I have ever heard. . . . This crap that there is no place for me is BULL."  (Def. Ex. 10 at 27.)  Plaintiff then contacted his union representative and his personal attorney "because [he] felt that [he] was being discriminated against."  (Def. Ex. 21 at 85.)

Plaintiff continued sending emails to McCabe regarding his employment.  In a July 29 email, Plaintiff stated, "I have sent you many e-mails about coming back to work.  You have seemed to stop me at every turn. . . .  Please let me know what you consider a release to return to work will consist of. . . ."  (Def. Ex. 10 at 28.)  McCabe responded, "Your e-mail is disrespectful and I will not respond to any more of your inquiries.  I will repeat one more time as I have many times in the past that you have to be cleared for full duty and your own doctor has not done that."  (*Id.* at 29.)

On August 27, 2003, the Oakland County Sheriff's Department notified Plaintiff of its intent to request his "separation" from employment.  Because Plaintiff had exhausted all of his accumulated personal leave and remained unable to return to work, an Oakland

County personnel policy subjected him to non-disciplinary separation.[1] Moreover, Defendants found it unlikely that Plaintiff would be able to return to his position as a Deputy Sheriff:

> [A] review of your medical file . . . indicates that it is unlikely that you will be able to return to work in a reasonable time without restrictions. . . . [Y]ou are restricted to duties that would minimize your exposure to trauma. As a Deputy Sheriff there is a great likelihood for "exposure to trauma."

(Def. Ex. 18.)

Plaintiff's physician then sent a letter on his behalf stating that he "may return to all duties as a Deputy Sheriff except for being exposed to autopsy photos, or the autopsies of a child or adolescents or crime scenes involving fatalities of children or adolescents." (Def. Ex. 19.) In light of Plaintiff's remaining limitations, Defendants determined that he remained unfit to perform all duties of a Deputy Sheriff. Defendants implemented Plaintiff's separation on October 2, 2003.

On May 13, 2004, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On July 9, the EEOC dismissed Plaintiff's Charge. (Def. Ex. 16.)

Plaintiff filed this lawsuit on June 29, 2005. Significantly, the Complaint mentions nothing about separation from employment, discharge, or termination. Rather, it discusses

---

[1] In its letter to Plaintiff, the Oakland County Sheriff's Department cited Rule 9.3.1.2 of its personnel policies, which relates to employees collecting long-term disability benefits. Defendants have subsequently conceded, however, that Rule 9.3.1.2 does not apply, and have argued that Rule 9.3.1.1 was the appropriate basis for Plaintiff's separation. That Rule deals with employees who have exhausted their personal leave accumulation. (Def.'s Br. 9; Def. Ex. 20; Pl. Ex. 1 at 5.) Both Rules apply to situations in which "an employee voluntarily or involuntarily separates himself or herself . . . by not appearing for work. . . . It is not a disciplinary action in that the employee initiates the action by continued absence from work." (Def. Ex. 17.)

4

the "several occasions" on which Defendants failed to accommodate Plaintiff's alleged disability.  Specifically, Plaintiff's ADA Claim reads in part,

> In rejection of Plaintiff's request for accommodation . . . [and] that Defendants assist him in finding alternative employment within their Sheriff's Department, Defendants refused to place Plaintiff in a position that was open at the time of his request.
>
> Defendants' failure to make reasonable accommodations and to reasonably work with Plaintiff in finding alternative employment within Defendants' Sheriff's Department constitutes discrimination against Plaintiff . . . .  This conduct constitutes a violation of the ADA . . . .
>
> Defendants have failed to undertake any good faith effort, in consultation with Plaintiff, to identify and make reasonable accommodation for Plaintiff.  Plaintiff has sent numerous emails and other communications to agents of Defendants requesting that Defendants undertake a good faith effort to identify and make a reasonable accommodation for employment to Plaintiff.

(Compl. 4-5.)

## II.   Standard of Review

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Id.* at 323.  Once the moving party meets this burden, the non-movant

must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the Court must "construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Id.* The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III.    Discussion

Defendants' first argument is that Plaintiff's ADA claim is barred by the applicable statute of limitations. Citing Title VII procedural requirements, which govern this case as well, Defendants note that Plaintiff had three hundred days from the date of the alleged disability discrimination in which to file a claim with the EEOC. *See* 42 U.S.C. § 12117; 42 USC § 2000e-5(e)(1). Defendants contend that for purposes of the statute of limitations, the relevant conduct occurred on February 27, 2003, when McCabe first informed Plaintiff that there was no available position for him at the Oakland County Sheriff's Department. Plaintiff filed his EEOC claim on May 13, 2004, far exceeding the three hundred day limitation period.

In response, Plaintiff identifies the "continuing violation doctrine," which, under certain conditions, applies to ADA claims exceeding the three hundred day filing requirement. Plaintiff's terse discussion of this issue, however, neither explains the

6

doctrine nor argues why it applies to the facts of this case. A more thorough analysis makes clear that it does not.

"The Sixth Circuit has previously recognized two distinct categories of continuing violations, namely, those alleging serial violations and those identified with a longstanding and demonstrable policy of discrimination." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003).

> The first category arises where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation such as where an employer continues to presently imposes [sic] disparate work assignments or gives unequal pay for equal work . . . . The second category of continuing violation arises where there has occurred a long-standing and demonstrable policy of discrimination. This requires a showing by a preponderance of the evidence that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure.

*Burzynski v. Cohen*, 264 F.3d 611, 618 (6th Cir. 2001) (internal quotations and citations omitted).

Plaintiff alleges that while Defendants allegedly discriminated against him, they "had several employees who were working in light-duty job assignments so that their handicap or disability could be accommodated." (Compl. 3-4.) Thus, because Plaintiff does not allege intentional discrimination against the class of people to which he belongs, only the "serial violations" category is at issue here.

In *AMTRAK v. Morgan*, 536 U.S. 101 (2002), the Supreme Court addressed this category of continuing violation. After discussing a number of precedents, the Court concluded,

> We derive several principles from these cases. First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory

7

> act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the . . . time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim. . . .
>
> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice."

*Id.* at 113-15 (footnotes omitted).

"*Morgan* overturns prior Sixth Circuit law addressing serial violations, i.e., plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003). Thus, Plaintiff may not simply point to Defendants' conduct prior to the limitations period as being part of a continuing violation. Rather, he must establish that Defendants discriminated against him during the limitations period—after July 19, 2003.

As discussed above, Defendants' first refusal to permit Plaintiff to return to work occurred on February 27, 2003, when McCabe sent an email explaining that "there doesn't appear to be any job at the Sheriff's Department" for him. Because this refusal was a "discrete discriminatory act" that occurred outside the three hundred day limitation period, Plaintiff cannot recover on his claim that it violated the ADA.

Plaintiff points out, however, that "he was not terminated until October 3, 2003." (Pl.'s Br. 4.) But Plaintiff neither alleges in his Complaint nor argues in his Brief that his separation from employment constituted a separate "discrete discriminatory act."

8

Presumably, Plaintiff recognizes that his separation was merely the natural administrative result of Defendants' refusal to accommodate him, and for practical purposes, it changed very little. The alternative to separation would have been for Plaintiff to remain an employee in name only, with no pay or prospects of actual work. Plaintiff does not seek relief for his separation; he merely uses it in an attempt to toll the statute of limitations on his failure to accommodate claim. The date of Plaintiff's separation does not change the analysis regarding his claim of failure to accommodate, however, since that was a separate act altogether. *See Sharpe*, 319 F.3d at 268.

Plaintiff points out that even between July 19 and October 3, 2003, he "was constantly requesting the right to return to his employment with the Sheriff's Department." (Pl.'s Br. 4.) The record supports this contention, and further demonstrates that on July 29, 2003, McCabe told Plaintiff, as he had "many times in the past," that he could not return to work until he had been cleared by his doctor. Furthermore, while Plaintiff does not argue the issue, Defendants' decision to separate him from employment implicitly reiterated the decision not to accommodate his alleged disability. Thus, while Defendants' initial decision not to accommodate Plaintiff occurred outside the three hundred day limitations period, Defendant maintained its position well into the limitations period. Although Plaintiff's theory is not entirely clear, he appears to argue either that each refusal to accommodate was a separate "discrete discriminatory act," or that the refusals together constituted an *ongoing* act that stretched within the limitations period.

In response, Defendants rely on a Third Circuit Court of Appeals case presenting similar facts. In *Zdziech v. DaimlerChrysler Corp.*, 114 Fed.Appx. 469 (3d. Cir. 2004), the plaintiff, who had been placed on disability, had improved to the point that he could resume

9

working in his previous position with a reasonable accommodation. The defendant refused to accommodate him, however. For a year and a half, the plaintiff made multiple requests for accommodation, which the defendant either ignored or explicitly rejected. Then, only days after his most recent request, the plaintiff filed an EEOC charge. *Id.* at 471.

The Third Circuit rejected the argument that each request for reinstatement and accommodation constituted a discrete act of discrimination:

> The failure to act upon receipt of a letter requesting reinstatement is not a discrete act of discrimination and does not restart the statute of limitations. [The plaintiff's] complaint, and the subsequent letters, stem from [the initial act of] placing him on disability leave. . . . To permit a person to reset the statutory requirements for the timely filing of a complaint merely by writing a new letter to his former employer would clearly vitiate the intent behind the 300-day time limit.

*Id.* at 472.

In *Palochak v. County of Beaver*, 2006 U.S. Dist. LEXIS 8585 (W.D. Pa. Mar. 6. 2006), a Pennsylvania district court applied the holding in *Zdziech* to a factual scenario remarkably similar to that of the present case. The plaintiff, a deputy sheriff, had gone on medical leave due to complications from diabetes. The plaintiff's doctor eventually released him to return to work, but limited him to "light duty." The plaintiff repeatedly sought reinstatement and an accommodation, but the defendants denied his requests. *Id.* at *10. Eventually, the defendants informed the plaintiff that "they did not have a position for him and that his service and seniority were being terminated at that time." *Id.* at *2-4. Although the plaintiff had first requested reinstatement and accommodation outside of the limitations period, he had repeated his requests (and been denied) within three hundred days of his EEOC charge.

10

As in *Zdziech*, the court found repeated requests and denials insufficient to re-start the limitations clock:

> To the extent that Plaintiff argues that Defendants' denials of his repeated requests to be reinstated to his former position on light duty constitute separate actionable unlawful employment practices so as to start a new limitations period for filing a charge, the Court finds that such an argument must be rejected. While it is clear that actions such as terminations, failures to promote, denials of transfer, and refusals to hire are considered to be separate incidents of discrimination giving rise to a new claim of discrimination, the Third Circuit has held that the repeated refusal of an employer to reinstate an employee to a formerly held position does not have the same effect. . . .
>
> [T]he Court finds that Plaintiff's disability complaint and subsequent requests for reinstatement stemmed from Defendants' initially placing [him] on extended disability leave and refusing to return him to work with accommodations. Therefore, Defendants' continued refusals to grant these requests do not restart the statute of limitations for this claim.

*Id.* at *11-13 (internal citations and footnote omitted).

One federal district court in the Sixth Circuit has adopted the same reasoning. In *Hall v. Scotts Co.*, 2005 U.S. Dist. LEXIS 38396 (S.D. Ohio Dec. 21 2005), the plaintiff was away from work because of a breathing condition. He requested that the defendant provide an accommodation in the form of a respirator/hardhat combination that would cost $1,000. The defendant refused. Then, over a year later, the plaintiff offered to purchase the device himself. The defendant again refused to accommodate him, insisting that the plaintiff could not work while wearing the device. The first refusal fell outside of the three hundred day limitations period, while the second was within the period. *Id.* at *1-2.

In addition to *Zdziech*, the court found guidance in a Second Circuit opinion explaining,

> The rejection of a proposed accommodation is a single completed action when taken, quite unlike the 'series of separate acts' that constitute a hostile

11

work environment and 'collectively constitute' an unlawful employment practice. Although the effect of the employer's rejection continues to be felt by the employee for as long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer, denials that *Morgan* offered as examples of a discrete act.

*Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 135 (2d Cir. 2003) (internal citations omitted). In light of these authorities, the court rejected the plaintiff's argument that the defendant's two separate rejections constituted "an ongoing 'interactive process' or dialogue" regarding his request for accommodation. The court concluded,

> [T]here has been one decision . . . that is potentially discriminatory, and that is refusing to allow [the plaintiff] to wear the respirator mechanism at work. The effects of that specific decision continued [into the limitations period], but there is not an ongoing practice of discrimination that can preserve the claim. [S]imply asking a second time does not renew or revive his claim when there is ultimately but one act by [the defendant].

*Id.* at *13-14.

Finally, the Supreme Court addressed this issue in *Delaware State College v. Ricks*, 449 U.S. 250 (1980). There, the defendant college had denied the plaintiff tenure, instead offering a one-year terminal contract. The plaintiff argued that the relevant event for statute of limitations purposes was the termination of his employment at the end of his contract. *Id.* at 503-504. The Supreme Court disagreed, reasoning,

> It appears that termination of employment . . . is a delayed, but inevitable, consequence of the denial of tenure. [T]he only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to [the plaintiff]. That is so even though one of the effects of the denial of tenure—the eventual loss of a teaching position—did not occur until later.

*Id.* at 504.

Similarly, Plaintiff's eventual termination was a "delayed, but inevitable, consequence" of Defendants' initial denial of his request for accommodation. Plaintiff only

alleges discrimination at the time the decision was made not to return him to his duties, even though the effect of his actual "separation" from employment was delayed.

The well-reasoned opinions discussed above demonstrate why Plaintiff's claim of discrimination cannot survive this Motion. After getting McCabe's February 27, 2003 email, Plaintiff contacted his union representative and his personal attorney "because [he] felt that [he] was being discriminated against." (Def. Ex. 21 at 85.) Plaintiff therefore appears to have recognized the importance of Defendants' decision not to accommodate him. Neither Defendants' adherence to that decision nor the ongoing effects of it were sufficient to preserve Plaintiff's claim. Despite his many requests for relief—and Defendants' many denials—well into the statutory period, Plaintiff's entire argument centers around one decision that was made more than three hundred days before he filed his EEOC Charge.

## IV.  Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above and on the record, the Court hereby GRANTS Defendants' Motion for Summary Judgment.

                                         s/Nancy G. Edmunds  
                                         Nancy G. Edmunds  
                                         United States District Judge

Dated:  July 27, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 27, 2006, by electronic and/or ordinary mail.

                                         s/Carol A. Hemeyer  
                                         Case Manager